3:26 CV 312

**JUDGE HELMICK**

**MAG JUDGE CLA**

CASE BRIEF INTRODUCTION



**FILED**

FEB 0 6 2026

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
TOLEDO

1    This case is brought because the defendants actions decrease the ability of the citizens

2  and visitors of Lucas County to use the courts, participate in civic matters and decrease their

3  ability to be productive members of the community.

4    The defendants have restricted the publics access to the law library of Lucas County

5  to an unusable amount without rational reasoning. Resulting in decreased ability for the

6  general public to know the law, practice the law and understand the law for the purposes of

7  personal, family and community life, business and civic engagement.

8    Common reasoning should say, the actions result in or create a permissiveness of

9  counter culture to combat injustice by those who cant obtain it in the courts and allow or

10  further victimization. They effectively narrow protections the shield of the laws create,

11  remove the sword from the justice system. While also tipping the scales in favor of criminals,

12  civil violators, the wealthy and connected. Creating a disparate impact for those of the

13  working class, lower class, elderly, uneducated and unestablished of the Lucas County

14  communities, Placing the burdens and frustrations of injury and damages on the community.

15    Their reasoning for depriving the people of the right to choose the courts as their

16  method of correction for injustice, is their professing that the cost of security is too great, and

17  have offered no alternative solutions, nor been willing to entertain alternatives.

18

19  Forgive my assumptions but after conversations with them, In my opinion I find its simply

20  stated they find these people are not of value and far from priority. They have failed to

21  understand foundational principles of American Government. Their practice not dissimilar

22  from early vagrancy laws of the nation that herded people out of towns and into work camps.

23

24  "An activist who doesnt know the law and history. Who lacks data, research and reasoning to

25  argue and petition for its change is a protester"

1

List of Authorities

Access-to-Courts

Bounds v. Smith, 430 U.S. 817 (1977)

Lewis v. Casey, 518 U.S. 343 (1996)

Christopher v. Harbury, 536 U.S. 403 (2002)

First Amendment — Right to Receive Information

Lamont v. Postmaster General, 381 U.S. 301 (1965)

Petition Clause

Borough of Duryea v. Guarnieri, 564 U.S. 379 (2011)

Due Process — Fair Notice & Court Access

Tennessee v. Lane, 541 U.S. 509 (2004)

Equal Protection — Irrational Discrimination

City of Cleburne v. Cleburne Living Center, 473 U.S. 432 (1985)

U.S. Dep't of Agric. v. Moreno, 413 U.S. 528 (1973)

Romer v. Evans, 517 U.S. 620 (1996)

Pro Se Liberal Construction

Haines v. Kerner, 404 U.S. 519 (1972)

Correct-Theory-Not-Required

Johnson v. City of Shelby, 574 U.S. 10 (2014)

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND
DAMAGES
(42 U.S.C. § 1983 – Equal Protection, Right To Information, Right To
Petition, Due Process / Access to Courts, and Monell Liability)

INTRODUCTION

1.      This is a civil-rights action under 42 U.S.C. § 1983 challenging the Defendants' policy and practice of restricting access to the courthouse law library for self-represented litigants and public law researchers, while providing full, unrestricted access to licensed attorneys.[1]

2.      Under Defendants' policy, non-Ohio-bar members may only access the law library on Tuesdays and Thursdays from 1:00 PM to 3:00 PM, a total of four hours per week. Defendants' policy allows for an exception it does not notice to the public, It imposes appointment-only access, routinely cancels appointments, and requires the presence of three library employees before a pro se litigant may enter, resulting in systematic denial of timely access to legal research resources.[1]

3.      These restrictions do not apply to attorneys, who may enter the law library freely with library memberships and without appointments, staffing requirements, or delays.

4.      Defendants' policy violates the Equal Protection Clause by treating similarly situated court users differently without a rational basis[1], and violates the Due Process Clause and First Amendment by denying Plaintiff meaningful access to the courts.//

//

[1]. For those who are not familiar with the legal concept of rational basis and access to the courts or confused by legal wording, what the defendants are doing is depriving the public and self represented of constitutionally entitled library access and bestowing favor and unjust bias advantage upon those who are represented by legal counsel, while making an additional burden for the self represented. This occurs in civil courts, family courts, and criminal courts of Lucas County Ohio.

JURISDICTION AND VENUE

5. The unconstitutional restrictions arise from an official policy, custom, or practice of the County, its Court Administration, and the sub contracted Library operators, making the County liable under Monell v. Department of Social Services, 436 U.S. 658 (1978).

6. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 because the action arises under the Constitution and laws of the United States.

7. Venue is proper under 28 U.S.C. § 1391 because the events giving rise to the claims occurred in this District and the Defendants reside in Lucas County.

PARTIES

8. Plaintiff is a resident of Ohio and is a self-represented litigant, businessman, activist and legal researcher who regularly requires access to the courthouse law library to prepare filings and meet court deadlines.

9. Defendant [A. Lucas County of Ohio] is a municipal entity with over-site of the Lucas County Law Library Resource Board (Defendant B. "LCLLRB") and operates a Lucas county law library website [ https://www.co.lucas.oh.us/1885/Lucas-County-Law-Library ].
Its responsible for overseeing funding, rules and operations of the LCLLRB and the content of the county law library website and is liable under § 1983. For all counts.

10. Defendant [B. Lucas County Law Library Resource Board] is a municipal or private entity responsible for operating the law library in Lucas County and is liable under § 1983. Counts I-IV

11. Defendants (Lucas County Board of Commissioners) For 2024 and 2025 to present

C. Pete Gerken;

D. Anita Lopez;

E. Lisa Sobecki;

These defendants were made aware of the deficiencies of the Law Library in restricted hours and failure of the law library (the county and LCLLRB websites) and its LCLLRB operators to notify the public of a policy of allowing appointments. They are liable in their official and personal capacities under § 1983 reckless disregard and deliberate indifference  Counts I-IV

12. Defendants LCLLRB members and an unknown Librarian are

F.      Christopher Parker – Chair;

G.      Elizabeth Vaughan – Member;

H.      Evy Jarrett – Member

I.      Steven Spitler – Member

J.      Valerie Fatica – Member

K.      Laura Novelo – Library Director & Administrator

L.      Unknown librarian 1

M.      Unknown librarian 2

Were and are responsible for implementing and enforcing the challenged policies and are sued in their official and personal capacities under § 1983 reckless disregard and deliberate indifference claims. Counts I-IV

FACTUAL BACKGROUND and ALLEGATIONS

13. From the second quarter of 2024 to 2025 I attempted to access the courthouse law library on multiple occasions to conduct legal research necessary for personal education of Ohio and Federal law, to understand my legal duties as an American and Ohio resident. To assess any barriers or benefits the local laws might have on business opportunities, to do research for active litigation in other federal districts [9th circuit Az Division 2:21-cv-962 GMS]; federal petitioning of US Elect: [DC federal circuit 1:25-cv-112 APM now in appeal as: Nicholas Woodall v. Donald Trump, 25-5259, (D.C. Cir.)]; to research historical law of Ohio for the DC petitioning and general knowledge for future legislative petitioning requests;  and litigation which I have declined to pursue a claim against [an unknown law enforcer of Whitehouse Ohio who illegally detained me, a vehicle stop absent a dui checkpoint or valid reason, occurred 1-2 weeks prior to the butler assassination attempt of the president.], a claim against [a private security guard of the building housing the FBI Toledo offices at 420 Madison Ave, Toledo, OH 43604 who attempted to act under false color of law using his retired military service as an authority to order I submit my drivers license so he could record my identity, allegedly for FBI purposes, and the FBI was notified of this.].

14. For those reasons and others, I contacted the Lucas County Law Library and spoke to two different librarians one I believe I could identify. Defendant L (librarian 1)told me not only the public was restricted library access, self-represented litigants with open cases are also restricted and may only enter on tue and thur from 1-3pm, only Ohio Bar members could obtain library memberships. In mid to late 2024  access was repeatedly denied outside the two day two hour times with "librarian 1" stating "no exceptions".//

15.     In early 2025 after contacting Toledo City counsel and several of the Defendants. I was notified of an appointment option existence not previously stated by [Defendant L: no exceptions to the two day two hour access rule exist], by an unknown librarian [Defendant M] stating that appointments exist but would be canceled unless three library employees were present. In 2025 an appointment date was scheduled, and canceled when I arrived on the scheduled date (stating lack of staff), preventing timely access to legal materials[2].

16.     Attorneys, however, are permitted to enter the law library without appointments, without staffing requirements, and without restrictions, having library memberships offering 365 a year 24hr access (the library membership page states: "The Library exists to provide legal research materials and assistance to the courts and attorneys of Lucas County", but does not mention the public who must have access to legal texts). The statement is expressed in their persistent deprivations.

17.     Defendants even after notice to the Library staff, LCLLRB and County commissioners in 2025 [ Exhibits, emails and affidavit will be filed separately on claim approval, court approval and after defendants reply] who each operate a separate website [ https://lucascountylawlibrary.com/ ; https://www.co.lucas.oh.us/1885/Lucas-County-Law-Library ] for the law library; have refused to make notice on these sites to inform the public of the ability to request appointments, this being a clear practice of bias by the defendants creating a chilling effect on use of the courts and dissuades public use of the library and an understanding and compliance with the law and legal practice. It emboldens the librarians to deny access and shows clear bias with all the other facts and evidence.

2. I was looking for hard copy books containing info of deposition practice of the state and fed. for cases [2:21-962, and unpursued claims] and general legal texts and historical texts of the states first legislative acts for legislative research to support and bolster a request of equal access to the law library from the legislative branch and the Lucas county board of commissioners and for research for [25-5259 (D.C. Cir.)]).

18. Defendants [A. through F.] claim(ed) or state in Lucas county meetings, emails and verbal communications [Affidavit and exhibits to be filed] either by being recipient or speaking on behalf of the others, that the restrictions are based on "security concerns," yet they refuse [Defendants A. through K.] to hire private security, use deputy monitoring or provide library memberships to the public to offset security costs. Costs they claim are the reason they choose to deny the public equal access to the law library (and courts) and in part have ignored reasonings (though not in these exact words)that:

19. Making the law library less accessible will result in greater crime and injustice in the communities.

• Where a public thats less equipt will be dissuaded from using the courts to punish violators with charges and civil claims and prevents the resulting judgments and awards that dissuade victimization and crime in the Lucas county area[3].

• They have ignored professings and fail understandings of governance concepts that, laws (when just) create civility. That barriers to obtain compensation for injury and damages by lawful means creates a counter culture where those deprived access to justice must seek correction and dissuasion of injustices by illegal or extra judicial means. Or submit to an oppressive society that refuses equal justice. Where the defendants actions or inactions create a community where justice is granted to only those with legal representation, or by great inconveniences of time and financial expenditures.

• Defeating the purpose of the courts. Making use of the courts a burden greater than the injury sought to be corrected and the burden of settlements or no contest pleas by innocent defendants less of a burden than the act of defending ones honor, credibility, opportunity and innocence.

[3] While no known data or research shows access to law libraries, the texts and services they provide increases a litigants chances of success, this following report does state:p1· "Self-help centers benefit courts and court users alike. Litigants who visit a self-help center are more likely to file paperwork that is legally sufficient. Having litigants better prepared for court appearances..." https://perma.cc/8UM8-XZPP https://ncsc.contentdm.oclc.org/digital/api/collection/p16501coll2/id/881/download Its common sense that library access increases increase legal understanding and better access to justice for those who pursue it. Browsing the shelves results in inspiration and a greater understanding of law than requiring the public to hope they can get the info by taking pictures of the texts in the limited time the defendants find adaquete, It is unknown why they believe two hours two days a week is sufficient.

8

19. The policies are over broad, arbitrary, and irrational, and disproportionately burdens self-represented litigants and those seeking legal knowledge for business operation, compliance with law, general legal research for legislative petitioning and litigation practice.

20. As a result of these restrictions, I was hindered and reduced in my capacity to perform and complete legislative petitioning research, necessary legal research, feared an ability to prepare filings, or meet litigation deadlines, expected and expect during this litigation to have to request time extensions to perform legal research at the defendants library (which resulted in plaintiff not pursuing viable civil claims). Because of these deprivations I also bought westlaw access (now expired although this did not equal the texts and services available from the library to its members and would be opponents) because of these restrictions impairing my ability to meaningfully access the courts.

21. Defendants' actions reflect official policies, customs, or practices of restricting law-library access and services for pro se litigants that burdens their litigation while granting preferential treatment to attorneys in a practice of bias that reduces civility in Lucas County Ohio.

V. CLAIMS FOR RELIEF

COUNT I – Equal Protection Clause (42 U.S.C. § 1983) against Defendants A-M

22. Plaintiff realleges all prior paragraphs.

Element 1: Similarly Situated Persons Identified

23. Self-represented (and law researchers) litigants and attorneys are similarly situated in their need to access legal research materials, self-represented more so in need lacking the formal education and guidance a bar attorney has.

Element 2: Differential Treatment

24. Defendants intentionally treat pro se litigants differently by limiting them to only four hours per week of law-library access; and In 2024 They denied me appointment access to the library, when confronted in 2025 they seemingly created an appointment option, but canceled my appointment on arrival and continue to refuse to post public notice on their websites to inform of public appointment options for access. They deny the public the ability to browse books and require title searches and requests and also restrict access to services like hein-online and others while attorneys remain in receipt of unrestricted access.

Element 3: Discriminatory Policy or Practice

25. Defendants intentionally treat pro se litigants and public differently by imposing burdensome restrictions not applied to attorneys and denies non attorneys and people without bar membership (equal) access to the library services and its memberships in restricted hours and no appointments.

Element 4: No Rational Basis / Illegitimate Government Interest

26. The distinctions imposed by Defendants are not rationally related to any legitimate governmental interest. Defendants have produced no data, evidence,//

1  // studies, or factual findings supporting the restrictions, and rely instead on

2  unsupported assumptions and administrative convenience. Under well-established

3  Supreme Court precedent, even under rational-basis review, the government must

4  articulate a legitimate interest supported by facts, and may not rely on arbitrary

5  distinctions or bare animus. *U.S. Dep't of Agric. v. Moreno, 413 U.S. 528, 534 (1973);*

6  *City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 446–50 (1985); Romer v.*

7  *Evans, 517 U.S. 620, 631–35 (1996).* Defendants' policy is both overinclusive and

8  underinclusive, and therefore fails rational-basis review.

9

10  Element 5: Constitutional Violation

11  27.    The policy violates the Equal Protection Clause of the Fourteenth Amendment.

12  //

13  //

14  //

15

16  COUNT II – Right to information / Access to Courts (42 U.S.C. § 1983) against

17  Defendants A-M //

18  Proceeds on the following page.//

19  //

20  //

21

22

23

24

25

Unified Doctrinal Explanation for Count II

28. Count II rests on a single, unified constitutional principle:

The government may not obstruct a person's ability to obtain the legal information necessary to litigate, petition, understand legal duties, comply with the law, or participate in civic life.

This unified right is built from five established constitutional doctrines that interlock:

A. Access-to-Courts Doctrine (Bounds, Lewis, Harbury)

The Supreme Court requires that access to the courts be meaningful, not symbolic. Meaningful access requires adequate access to legal information so a person can prepare filings, pursue non-frivolous claims, and avoid abandoning viable actions. Restrictions that foreseeably and actually hinder litigation violate this doctrine.

B. First Amendment Right to Receive Information (Lamont)

Americans have a constitutional right to acquire information and ideas, and the government may not impose burdens that chill learning or self-education. Legal information is core civic information — necessary for understanding rights, duties, risks, obligations, opportunities and potential in self and communities.// //

//

C. Petition Clause (Guarnieri)

Petitioning includes lawsuits, administrative filings, legislative requests, and communications with government officials.

A person cannot petition effectively without access to the legal information that informs those petitions.

D. Due Process (Lane)

Access to courts is a fundamental right.

Barriers that prevent a person from understanding legal duties or defending their rights violate Due Process.

E. Equal Protection (Cleburne, Moreno, Romer)

The government may not create irrational classes and arbitrary or animus based rules— such as attorneys with full access and the public with restricted access— especially when the classification burdens a fundamental right.

Together, these doctrines form a single constitutional requirement:

29. The government must provide meaningful access to legal information. Meaningful access cannot exist where the public is limited to four hours a week, appointment access is denied and not posted, subject to cancellations and staffing requirements, while attorneys enjoy unrestricted access.//

//

//

COUNT II — Due Process / Meaningful Access to Courts

Element 1: Non-Frivolous Legal Claims + Need for Legal Information

30. The constitutional claims asserted arise from the facts alleged; the legal theories and authorities cited are representative and not exhaustive. The Court may request clarification of intent or state intent to apply the appropriate constitutional doctrine if it finds a failure in Plaintiff's application to the claims. It is believed these doctrines collectively establish that a person must be able to obtain the information necessary to litigate, petition, comply with the law, and make informed decisions to participate in life and civic matters.

   Authorities:

- Bounds v. Smith (meaningful access requires legal information)
- Lewis v. Casey (access must be adequate to pursue non-frivolous claims)
- Christopher v. Harbury (must identify underlying claims)
- Lamont v. Postmaster General (right to acquire information)
- Guarnieri (petitioning requires information)
- Lane (access to courts is fundamental)

Application to the Facts:

31. Plaintiff has active federal litigation requiring research and preparation, as well as viable civil claims that were abandoned due to lack of access. Plaintiff also needed legal information to understand statutory duties, evaluate business risks, determine compliance obligations and aquire knowledge for civic engagement. These needs fall squarely within the protections recognized in Bounds, Lewis, and Harbury for litigation; Lamont for acquiring legal information; Guarnieri for petitioning; and Lane for understanding and asserting legal rights. The facts alleged show Plaintiff //

// possessed non-frivolous claims and constitutionally protected informational needs regarding civic engagement that required meaningful access to legal materials.

Element 2: Government Action Hindering Litigation, Petitioning, and Legal Understanding

Authorities:

- Bounds (denial of adequate legal materials obstructs access)
- Lewis (restrictions that foreseeably hinder litigation violate the Constitution)
- Lamont (government may not burden acquisition of information)
- Guarnieri (obstruction of petitioning is unconstitutional)
- Lane (barriers to court access violate Due Process)

Application to the Facts:

32. The Defendants restricted public hours to two hours of access on two days per week, refusal to disclose procedures (appointment options),  appointment cancellations, staffing requirements for public appoinments, and refusal to allow browsing the shelfs by the public foreseeably and actually hinder Plaintiff. These actions prevented Plaintiff from preparing filings, researching active cases, understanding legal duties, evaluating liabilities, and conducting legislative and civic petitioning. Under Bounds and Lewis, these restrictions constitute government-imposed barriers to litigation; under Lamont, they burden the right to receive legal information; under Guarnieri, they obstruct petitioning; and under Lane, they impose unconstitutional barriers to court access and fair notice. The facts demonstrate direct governmental obstruction of multiple constitutional rights.

Element 3: Actual Injury

Authorities:

- Lewis (actual injury requirement)
- Harbury (must show the underlying claim was frustrated)
- Bounds (lack of access causing inability to prepare filings is injury)

Application to the Facts:

33. Plaintiff was hindered in preparing filings in active litigation, was forced to abandon viable claims, and incurred financial costs purchasing inferior research substitutes. Plaintiff was also prevented from accessing materials necessary to understand legal duties and evaluate risks. These harms directly match the injuries recognized in Lewis (hindered or abandoned claims), Harbury (loss of viable claims), and Bounds (inability to prepare filings due to lack of access). The facts alleged constitute actual injury under the Access-to-Courts doctrine.

Element 3: Constitutional Injury (First Amendment, Petition Clause, Due Process, and Equal Protection)

34. In addition to the litigation-specific injuries recognized under the Access-to-Courts doctrine, Plaintiff suffered independent constitutional injuries that do not require a showing of "actual injury" in the Lewis sense. These injuries arise under the First Amendment, the Petition Clause, the Due Process Clause, and the Equal Protection Clause. Each doctrine recognizes constitutional//

1 // harm when government action burdens, obstructs, or discriminates against the

2 exercise of protected rights. These constitutional injuries are distinct from, and

3 operate independently of, the Access-to-Courts actual-injury requirement.

4

5 <u>APPLICATION AND AUTHORITIES ARE AS FOLLOWS</u>

6

7 First Amendment – Right to Receive Information:

8

9 • The First Amendment protects the right of adults to acquire information

10 and ideas necessary for self-education, civic participation, and informed

11 decision-making. Lamont v. Postmaster Gen., 381 U.S. 301 (1965).

12 • Defendants burdened Plaintiff's ability to obtain legal information

13 necessary to understand the law, evaluate legal and business risks, comply

14 with legal duties, and engage in civic discourse.

15 • The constitutional injury is the burden on acquiring information itself,

16 which is actionable even without a missed filing or abandoned lawsuit.

17 Petition Clause – Right to Petition Courts and Government

18 • The Petition Clause protects the right to seek redress from courts,

19 legislatures, and government officials. Borough of Duryea v. Guarnieri, 564

20 U.S. 379 (2011).

21 • Defendants obstructed Plaintiff's ability to gather the legal information

22 required to petition courts, legislators, and public officials regarding legal

23 reform and grievances.

24 • The constitutional injury is the obstruction of petitioning, which does not

25 require litigation-specific harm.

Due Process – Fair Notice and Access to Courts

- Access to the courts is a fundamental right protected by the Due Process Clause. Tennessee v. Lane, 541 U.S. 509 (2004).
- Due Process also requires that citizens have fair notice of legal duties and obligations before being subjected to penalties.
- Defendants deprived Plaintiff of the ability to understand legal obligations, liabilities, and duties imposed by state and federal law, and erected barriers to accessing the courts to vindicate those rights.
- The constitutional injury is the barrier to understanding and asserting legal rights, which is independently actionable.

Equal Protection – Irrational Discrimination in Access to Legal Information

- The Equal Protection Clause prohibits irrational and arbitrary distinctions between similarly situated persons. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432 (1985) Classifications motivated by animus or lacking any legitimate governmental purpose are unconstitutional. U.S. Dep't of Agric. v. Moreno, 413 U.S. 528 (1973); Romer v. Evans, 517 U.S. 620 (1996).
- Defendants granted attorneys unrestricted access to legal information and services while imposing severe burdens on the public and self-represented litigants.
- The constitutional injury is the unequal and irrational treatment itself, which is actionable even without litigation-specific harm.

35. These constitutional injuries are each sufficient, standing alone, to establish liability under Count II, and they operate independently of the Access-to-Courts actual-injury requirement.

Element 4: Causation

    Authorities:

- Lewis (injury must be caused by the restriction)
- Lane (barriers imposed by government actors violate Due Process)
- Cleburne (irrational classifications causing harm violate Equal Protection)
- Moreno (animus is not a legitimate interest)
- Romer (classifications lacking legitimate purpose are unconstitutional)
- Lamont (burdens on acquiring information caused by government action violate the First Amendment)
- Guarnieri — (obstruction of petitioning caused by government action violates the Petition Clause)

Application to the Facts:

36. The restricted hours, appointment refusals, cancellations, staffing requirements, and refusal to disclose procedures directly prevented Plaintiff from obtaining legal information, preparing filings, understanding legal duties, evaluating risks, and petitioning government bodies. These same restrictions created the irrational classification between attorneys and the public. Under the cited authorities, these facts establish that Defendants' policies were the direct and proximate cause of Plaintiff's litigation harm, informational harm, petitioning harm, due-process harm, and equal-protection harm. But for these policies, Plaintiff would have been able to conduct the necessary research and avoid the injuries described. //

//

//

<u>Element 5: Constitutional Violations</u>

    <u>Authorities:</u>

- Bounds (meaningful access to legal information is constitutionally required)
- Lewis (inadequate access plus actual injury violates the right of access to courts)
- Lamont (burdens on acquiring information violate the First Amendment)
- Guarnieri (obstruction of petitioning violates the Petition Clause)
- Lane (barriers to accessing courts violate Due Process)
- Cleburne (irrational discrimination violates Equal Protection)
- Moreno (animus is not a legitimate interest)
- Romer (classifications lacking legitimate purpose are unconstitutional)

<u>Application to the Facts:</u>

37. By obstructing Plaintiff's ability to obtain legal information necessary to litigate, petition government, understand legal duties, comply with the law, and participate in civic life, Defendants violated multiple independent constitutional protections. Their restrictions denied meaningful access to legal information under Bounds and Lewis, burdened the First Amendment right to receive information under Lamont, obstructed petitioning under Guarnieri, impose unconstitutional barriers to court access and fair notice under Lane, and irrationally discriminated between attorneys and the public under Cleburne, Moreno, and Romero. Each doctrine independently establishes a constitutional violation, and together they demonstrate that Defendants' policies violated the unified constitutional right to meaningful access to legal information and the courts.

<u>COUNT III — Reckless Disregard for Constitutional Rights (42 U.S.C. § 1983)</u>

(Pled in the Alternative to Deliberate Indifference count IV)(Defendants A-M)

38. Plaintiff realleges all prior paragraphs.

<u>Element 1. Defendants Knew or Should Have Known of a Substantial Risk of</u>
<u>Constitutional Harm</u>

39. Defendants knew, or in the exercise of reasonable care should have known, that restricting non-attorney access to the law library to two hours on two days per week, canceling appointments, imposing staffing requirements, and refusing to disclose appointment procedures created a substantial risk of violating Plaintiff's constitutional rights, including Equal Protection, Due Process, First Amendment rights, Petition Clause rights, and meaningful access to the courts.

40. Defendants were repeatedly notified through Plaintiff's communications, complaints, and requests for access that their policies were obstructing litigation, preventing legal research, hindering legislative petitioning, and impairing Plaintiff's ability to understand legal duties and comply with the law.

<u>Element 2. Defendants Acted with Reckless Disregard</u>

41. Despite this notice, Defendants unreasonably failed to modify, suspend, refuse to enforce or correct the challenged policies, and continued to enforce restrictions that they knew or should have known posed a substantial risk of constitutional injury.

42. Defendants' conduct constitutes reckless disregard because it reflects a conscious failure to take reasonable steps to prevent foreseeable harm, falling well above negligence but below the threshold of deliberate indifference.

Element 3. Defendants had Authority and Ability to Prevent the Harm but failed to act

43. Each Defendant had the authority and ability to correct or refuse to enforce the unconstitutional conditions, including modifying access rules, posting public notice of appointment procedures, eliminating staffing requirements, or adopting neutral alternatives such as security personnel, sign-in procedures, or public memberships.

44. Defendants' failure to take any reasonable corrective action despite their authority to do so constitutes reckless disregard for Plaintiff's constitutional rights.

Element 4. Causation and Injury

45. As a direct and proximate result of Defendants' reckless disregard, Plaintiff suffered actual injury, including impaired ability to litigate, abandonment of non-frivolous claims, inability to understand legal duties, inability to evaluate legal and business risks, inability to petition the government, inability to participate in civic discourse, and financial costs incurred to mitigate the restrictions.

Element 5. Constitutional Violations

46. Defendants' reckless disregard resulted in violations of Plaintiff's rights under the First Amendment, the Petition Clause, the Due Process Clause, the Equal Protection Clause, and the constitutional right of meaningful access to the courts.//

1  COUNT IV – Deliberate Indifference to Equal Protection and the Right of Access to

2  the Courts and Law Libraries  (42 U.S.C. § 1983 – Fourteenth Amendment)

3  (against Defendants A-L)

4  Pled in the Alternative to and in Conjunction with Counts I, II, III and V

5

6  47. Plaintiff realleges all prior paragraphs.

7

8  Element 1: Defendants Knew of a Substantial Risk of Equal Protection,

9  Court-Access, and Legal-Research Violations

10

11  48. Defendants knew, or were on actual notice, that restricting non-attorney access to

12  the courthouse law library to two hours on two days per week, denying appointment

13  access, cancelling appointments without accommodation, refusing to disclose access

14  procedures on websites, and imposing staffing requirements only on non-attorneys

15  created a substantial and obvious risk of violating Plaintiff's constitutional rights.

16

17  49. Defendants were repeatedly informed that these restrictions impaired Plaintiff's

18  ability to litigate, to petition the government, to understand legal duties, to evaluate

19  legal and business risks, to participate in civic discourse, and to conduct legal

20  research necessary to exercise First Amendment rights, Due Process rights, and

21  meaningful access to the courts.

22

23  50. Defendants were aware that attorneys were exempt from these restrictions

24  and enjoyed unrestricted access, further demonstrating the obvious risk of

25  unequal treatment and constitutional harm.//

Element 2: Defendants Disregarded That Risk Through Their Policies and Practices

51. Despite receiving repeated notice, Defendants continued to enforce the challenged restrictions, failed to modify or suspend the policies, and refused to adopt reasonable alternatives.

52. Defendants consciously disregarded the substantial risk that their policies would prevent Plaintiff from accessing legal research materials necessary to litigate, petition, comply with the law, understand legal duties, and participate in civic and legislative processes.

53. Defendants' refusal to correct or mitigate these conditions constitutes deliberate indifference, exceeding negligence and reflecting a conscious disregard of Plaintiff's constitutional rights.

Element 3: Defendants Had the Authority and Ability to Prevent the Harm but Failed to Act

54. Each Defendant had authority over, or responsibility for, law-library access rules, appointment systems, staffing and security decisions, public notice of access procedures, and oversight or ratification and enforcement of library policy.

55. Defendants could have adopted neutral alternatives—including posting appointment options. eliminating staffing requirements, providing public memberships, hiring security personnel, or allowing standard courthouse-hours access—but chose not to.

56. Defendants' failure to take any reasonable corrective action despite having the authority and ability to do so constitutes deliberate indifference.

Element 4: Defendants' Deliberate Indifference Caused Actual Injury

57. As a direct and proximate result of Defendants' deliberate indifference, Plaintiff suffered actual injury, including:

- Impaired ability to litigate active cases;
- Abandonment of non-frivolous claims;
- Inability to conduct necessary legal research;
- Inability to understand legal duties and liabilities;
- Inability to evaluate legal and business risks;
- Inability to petition the government effectively;
- Inability to participate in civic discourse and legislative processes; and
- Financial costs incurred attempting to mitigate the restrictions.

58. These injuries directly resulted from Defendants' refusal to provide meaningful access to legal research materials and equal access to the courthouse law library.//

//

Element 5: Constitutional Violations

59. Defendants' deliberate indifference resulted in violations of Plaintiff's clearly established rights under:

- The Equal Protection Clause;
- The Due Process Clause;
- The First Amendment;
- The Petition Clause; and
- The constitutional right of meaningful access to the courts, including the right to obtain legal information and conduct legal research necessary to exercise those rights.

//

COUNT V – Monell Liability (42 U.S.C. § 1983)

60. Plaintiff realleges all prior paragraphs.

61. The constitutional violations described above were caused by Defendants' official policies, customs, or practices, including:

- Restricting law-library access for pro se litigants and public legal researchers;
- Library employees denying existence of appointment options by phone;
- Refusing to post notice of the option of appointments on their websites;
- Imposing appointment-only access restrictions for non library members during normal court hours;
- Requiring three employees to be present;
- Canceling appointments when three employees are not present;
- Refusing to hire security or adopt less restrictive alternatives;
- Granting attorneys unrestricted access, additional legal services and texts access they deny to the public (non library members) by refusing library membership to people without Ohio bar membership.

62. These policies were created, approved, or ratified by officials with final policymaking authority.

63. The Defendants Lucas County of Ohio are therefore liable under Monell.

## VI. PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court:

A.      Declare Defendants' policies unconstitutional;

B.      Issue injunctive relief requiring modification of the Law library public access rules

B1.     In equal access for the public, to obtain memberships to the law library;

B2.     Issue injunctive relief requiring the law library be open to the public during court hours;(it is highly preferable that after normal business hours be created, though I fail to see how the court can impose this, beyond public memberships)

C.      Award compensatory damages;

D.      Award nominal damages;

E.      Award all costs related to litigation

F.      Grant any other relief the Court deems just and proper.

Prayed for by Nicholas Woodall on 2/5/2026